DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U. S. DEPARTMENT OF LABOR, and Michael DeNichilo, Respondents,

v.

UNIVERSAL TERMINAL & STEVEDORING CORP., Employer-Petitioner,

Midland Insurance Company, Carrier-Petitioner.

No. 77–1676.

United States Court of Appeals, Third Circuit.

Argued Feb. 14, 1978.

Decided April 21, 1978.

Leonard J. Linden, Linden & Gallagher, New York City, for petitioners.

Carin Ann Clauss, Sol. of Labor, Laurie M. Streeter, Asst. Sol., Joshua T. Gillelan, II, U. S. Dept. of Labor, Office of the Solicitor of Labor, Washington, D. C., for respondent, Director, Office of Workers' Compensation.

Milton Garber, Baker, Garber, Duffy & Baker, P.A., Hoboken, N.J., for respondent Michael De Nichilo.

Before GIBBONS, HUNTER, · Circuit Judges, and WEBER,* District Judge.

* Honorable Gerald J. Weber, United States District Judge for the Western District of Pennsylvaia, sitting by designation.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is a petition under § 21(c) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c) (Supp. 1975), to review a final order of the Benefits Review Board. The petitioners are the Universal Terminal & Stevedoring Corporation and its workers' compensation insurance carrier, Midland Insurance Company (hereafter collectively called the employer). The Board's order affirmed an administrative law judge's award to a longshoreman, Michael De Nichilo, for permanent total disability. The order also affirmed the denial of relief to the employer under the special fund provisions of § 8(f) of the Act, 33 U.S.C. § 908(f).

The employer makes two contentions on this petition. First, it contends that the Board erred in concluding that substantial evidence supported the administrative law judge's finding that De Nichilo's disability, which followed a myocardial infarction, resulted from an injury arising out of and in the course of his employment. Alternatively, it argues that even if De Nichilo's disability is compensable, it is entitled to avail itself of the liability limitation in § 8(f) because De ·Nichilo had a pre-existing partial disability when the injury occurred on the job. We conclude that the administrative law judge's finding that De Nichilo suffered a compensable injury is supported by substantial evidence in the record as a whole. However, we also conclude that the Benefits Review Board should have afforded the employer the protection of § 8(f).

## I. THE COMPENSABILITY OF DE NICHILO'S DISABILITY

On December 28, 1972, De Nichilo reported for work at the Military Ocean Terminal in Bayonne, New Jersey. His normal duty was to operate a forklift inside a warehouse where his employer stuffed and stripped containers. On that day, however, he was assigned as a driver for a group of long-

shoremen loading cargo on a ship. His task was to bring cargo from remote storage areas to the pier, where it could be hoisted into the ship's hold. According to the testimony credited by the administrative law judge, at about 10:30 A. M. De Nichilo and another longshoreman were directed to pick up several 1000-pound coils of wire which were resting in soft dirt some distance off the paved surface. After unsuccessfully attempting to negotiate their forklifts over the soft dirt, they decided to tow the coils to the paved surface with a hook and a rope. When De Nichilo forced a hook into one of the coils, he experienced chest pains, numbness in his arms, and shortness of breath. The discomfort continued until 4:30 P. M., when he experienced sharp pain and collapsed while attempting to mount his forklift. He was taken by ambulance to the hospital, where he was treated for a myocardial infarction until January 18, 1973. He was discharged from the hospital on that date. However, he has not worked since then and cannot return to work. Prior to December 28, 1972, De Nichilo had a history of heart disease complicated by diabetes mellitus.[1]

At the hearing before the administrative law judge De Nichilo's medical expert testified that there was a causal connection between the extra-strenuous work De Nichilo performed in moving the wire coils and the December 28, 1972 myocardial infarction. The employer's medical expert disputed this, claiming instead that the December 28, 1972 attack was only a natural progression of De Nichilo's pre-existing coronary artery disease. Both experts agreed that De Nichilo suffered from a pre-existing arteriosclerotic heart disease. The administrative law judge credited the opinion of De Nichilo's expert that the December 28, 1972 attack resulted from the stress of exertion during employment. That opinion, although disputed, provides evidentiary support for the administrative law judge's decision. Similarly, there is disputed evidentiary support for the conclusion that De Nichilo's disability is permanent and total. Since the Benefits Review Board properly applied the substantial evidence standard of review under 33 U.S.C. § 921(b)(3), we must affirm its decision. *Atlantic & Gulf Stevedores, Inc. v. Director, Office of Workers' Compensation Programs (Aleksiejczyk)*, 542 F.2d 602, 608 (3d Cir. 1976). We are not free to weigh the evidence ourselves.

## II. THE EMPLOYER'S § 8(f) CLAIM

All the medical experts agreed that prior to December 28, 1972, De Nichilo had a heart disease and a diabetic condition which made him more susceptible to a heart attack than someone not suffering from those conditions. The employer contends that even if the attack on that date was work-related, it was a second injury within the meaning of § 8(f). Accordingly, the employer claims that its liability should be limited by the terms of that provision.[2]

---

1. The record is inconclusive as to whether De Nichilo had suffered an earlier myocardial infarction. This uncertainty is due to two medical experts' different evaluations of electrocardiograms. *Compare* App. at 36a and 130a *with* App. at 235a, 238a, 250a, and 262–66a.

2. Amended § 8(f) reads as follows:
   (f) Injury increasing disability: (1) In any case in which an employee having an existing permanent partial disability suffers injury, the employer shall provide compensation for such disability as is found to be attributable to that injury based upon the average weekly wages of the employee at the time of the injury. If following an injury falling within the provisions of subdivision (c)(1)—(20) of this section, the employee is totally and permanently disabled, and the disability is found not to be due solely to that injury, the employer shall provide compensation for the applicable prescribed period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is the greater. In all other cases of total permanent disability or of death, found not to be due solely to that injury, of an employee having an existing permanent partial disability, the employer shall provide in addition to compensation under paragraphs (b) and (e) of this section, compensation payments or death benefits for one hundred and four weeks only. If following an injury falling within the provisions of subdivision (c)(1)—(20) of this section, the employee has a permanent partial disability and the disability is found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide

On June 18, 1976, the administrative law judge held that "[s]ince his [De Nichilo's] pre-existing heart disease and diabetes did not affect his earning capacity, he did not suffer from an existing disability within the meaning of Section 8(f)." App. at 20a. In reaching this decision, the administrative law judge relied heavily on the Benefits Review Board's decision in *Aleksiejczyk v. Atlantic & Gulf Stevedores, Inc.*, 1 BRBS 541, BRB No. 74–202 (1975). But *Aleksiejczyk*'s construction of § 8(f), which the administrative law judge below accepted, was overruled by this court on June 23, 1976, in *Atlantic & Gulf Stevedores, Inc. v. Director, Office of Workers' Compensation Programs (Aleksiejczyk), supra.*

The employer in the instant case pressed its § 8(f) contention before the Benefits Review Board. By the time of the Board's decision, it had become clear that the administrative law judge's reliance on the Board's *Aleksiejczyk* opinion was misplaced. Nevertheless, the Board rejected the employer's claim on a ground not considered by the administrative law judge—namely, that De Nichilo's prior condition was not manifest to the employer at the time that he was hired. The Board reasoned as follows:

> The principal purpose of the special fund in regard to second injuries is to assist the handicapped in obtaining employment. Congress, however, did not intend that all previous disabilities come within the scope of Section 8(f), but only those "manifest" to the employer at the time of hiring. The availability of knowledge of the pre-existing condition to the employer, not necessarily his actual knowledge, is the relevant standard. *Pye v. General Dynamics Corp.*, BRBS BRB No. 76–188, 76–188A (Feb. 18, 1977);

*American Mutual Ins. Co. of Boston v. Jones*, [138 U.S.App.D.C. 269], 426 F.2d 1263 (D.C.Cir. 1970).

> The nature of claimant's previous disability, a weakness of the cardiovascular system, was not a disability patently obvious to an employer. There is record evidence that the claimant regularly performed his duties in spite of his heart problems. The employer may have been able to discover claimant's condition through an employment physical, but there is no evidence that the employer availed himself of that opportunity or that the employer had actual knowledge of claimant's previous disability. While the record in this case may indeed substantiate several elements of the employer's argument on the Section 8(f) issue, an essential element has not been established, namely that the previous disability be manifest to the employer at the time of hiring. Therefore, we sustain the law judge's finding that the special fund provisions do not apply to this case.

App. at 28a–29a.

Naturally, the employer endorses our interpretation of § 8(f) in *Atlantic & Gulf Stevedores*, where we held that the test for a prior disability is a physical one rather than an economic one. A good part of the Director's brief addresses a reconsideration of that interpretation. However, our construction of § 8(f) has been followed by both the Fifth and the District of Columbia Circuits. *See C & P Telephone Co. v. Director, Office of Workers' Compensation Programs*, 184 U.S.App.D.C. 18, 564 F.2d 503 (1977); *Equitable Equip. Co. v. Hardy*, 558 F.2d 1192, 1198 (5th Cir. 1977). Only the court in banc could reconsider our decision in *Atlantic & Gulf Stevedores*. *E. g., Krolick Contracting Corp. v. Benefits*

compensation for the applicable period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is the greater.

In all other cases in which the employee has a permanent partial disability, found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide

in addition to compensation under paragraphs (b) and (e) of this section, compensation for one hundred and four weeks only.

(2) After cessation of the payments for the period of weeks provided for herein, the employee or his survivor entitled to benefits shall be paid the remainder of the compensation that would be due out of the special fund established in section 944 of this title.

33 U.S.C. § 908(f) (Supp.1975).

*Review Bd.,* 558 F.2d 685, 689 (3d Cir. 1977). The present dispute is between two competing insurance funds, and in the long run the certainty of coverage is probably as important as the correctness of our prior holding. Moreover, the underlying congressional purpose in creating the special fund was to encourage the employment of partially disabled persons. We remain convinced that our rejection of the economic test for disability is consistent with that purpose. Thus, we conclude that the administrative law judge erred in applying the economic test for disability.

As we pointed out above, the Benefits Review Board did not rely on the economic test to reject the employer's § 8(f) claim. Instead, the Board ruled that § 8(f) did not apply because the employer had not established its knowledge of the prior disability. The employer concedes that it did not offer evidence of De Nichilo's prior disability. But the employer objects to the Benefits Review Board's deciding the case on a ground not considered by the administrative law judge and requests at least a remand so that it can prove its knowledge. The employer points out, however, that due to the nature of longshoring employment, in which a transitory labor force reports to a hiring hall, employers generally have no opportunity to conduct physical examinations for the purpose of discovering pre-hire physical disabilities. Thus, the employer concedes that in most cases within the coverage of the Act an employer will lack such knowledge. It urges, however, that if the test for § 8(f) coverage is the second employer's actual knowledge of the prior disability, employers will insist upon pre-hire physical examinations, thereby erecting barriers to the employment of the partially disabled.

■ At oral argument the Director's attorney conceded that this would be a possible if not likely consequence of an actual knowledge requirement and that such a consequence would be inconsistent with the policy underlying § 8(f). The Director points out, however, that in *Atlantic & Gulf Stevedores* we said:

. . . The courts have adopted a "latent-manifest" test for determining when an employer will receive the benefit of § 8(f) treatment. Strong policy considerations dictate that only those employers who hire the handicapped with knowledge of their disabilities qualify for limited liability. The latent-manifest test is one method for separating eligible from ineligible employers. In view of the difficulty of proving actual knowledge of a disability, the test is ordinarily an objective one. Conditions that are latent rather than manifest to a prospective employer do not qualify as § 8(f) disabilities. If this court determines that Aleksiejczyk's medical history was latent, the Board's order finding against Atlantic & Gulf on the § 8(f) issue must be sustained.

The Administrative Law Judge found that the employer was aware of the medical problems of the decedent. . . .

542 F.2d at 609 (footnotes omitted). The quoted language might have been more carefully chosen, since it could be construed to refer to an actual knowledge requirement. Certainly the employer's actual knowledge of the disability, which the administrative law judge found in *Atlantic & Gulf Stevedores,* sufficed to establish a manifest rather than a latent disability. But we did not intent to hold in that case that actual knowledge was the only means for determining that a pre-hire disability was manifest for § 8(f) purposes. An examination by an employer may establish affirmatively that a disability was latent. *E. g., Duluth, M. & I. R. Ry. v. United States Dep't of Labor,* 553 F.2d 1144, 1151 (8th Cir. 1977). But an employer's lack of knowledge that an employee has an artificial limb or a glass eye is irrelevant, since such a pre-hire disability is clearly manifest in the sense that it is objectively determinable and free from doubt.

■ Heart disease is not as obviously manifest a disability as is the loss of a limb or an eye. Nevertheless, in many instances heart disease is objectively determinable and objectively determined. The record be-

fore the administrative law judge contains the evidence of De Nichilo's prior hospitalization for a possible myocardial infarction and the testimony of Dr. Edward S. Wally that De Nichilo suffered from a coronary artery disease. The administrative law judge relied upon this evidence of De Nichilo's abnormal heart condition to conclude that the degree of stress De Nichilo underwent on December 28, 1974, produced the attack he suffered on that date. Although the administrative law judge did not use the word manifest, he found that De Nichilo had pre-existing physical infirmities of heart disease and diabetes mellitus. These were readily discoverable by any employer who looked at De Nichilo's medical record. That record makes the disability manifest. No more is required for the purpose of assuring that only eligible employers receive the insurance coverage provided by § 8(f) of the Act. Therefore, since the findings of the administrative law judge establish the existence of a manifest condition, we hold that the employer is covered by the special fund provision.

## III. CONCLUSION

The petition to review the determination that De Nichilo is permanently and totally disabled will be denied. The petition to modify the order of the Benefits Review Board to limit the employer's liability to 104 weeks and to charge the excess to the special fund will be granted. An attorney's fee for De Nichilo's attorney, chargeable against the employer, will be awarded in an amount to be fixed on motion to this court.